USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/25/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP S. AURECCHIONE,

                          Plaintiff,

      -against-

SHERIFF LOUIS FALCO III, *et al.*,

                          Defendants.

7:22-CV-04538 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Philip S. Aurecchione ("Plaintiff") brings this action under 42 U.S.C. § 1983 ("Section 1983") against the following Defendants: Louis Falco III in his official capacity as Sheriff of the Rockland County Sheriff's Department, Thomas Walsh in his official capacity as Rockland County District Attorney, and Seamus Lyons, James VanCura, Mark Colon, Kerri Kralik, and Investigator Budnick in their official and individual capacities as law enforcement officers in the Rockland County Sheriff's Department (collectively, the "County Defendants"); Anthony J. Annucci in his official capacity as Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), and Diedre Ryan and Lynn Johnson-Richardson in their official and individual capacities as parole officers in DOCCS (collectively, the "State Defendants").  Plaintiff asserts federal claims for alleged violations of Plaintiff's substantive and procedural due process rights under the United States Constitution, as well as state law claims for false arrest, intentional infliction of emotional distress, and assault and battery.  (Second Amended Complaint ("SAC"), ECF No. 42.)  Pending before the Court are the County Defendants' and State Defendants' respective motions to dismiss the Second Amended

Complaint.  (ECF Nos. 70 and 78.)  For the following reasons, the Court GRANTS the County

Defendants' motion and GRANTS in part and DENIES in part the State Defendants' motion.

## BACKGROUND

The following facts are derived from the Second Amended Complaint and are taken as true

and constructed in the light most favorable to Plaintiff at this stage.

On September 3, 2018, Plaintiff was arrested on state firearm charges.  (SAC at ¶ 49.)  He

was detained in the Rockland County Jail.  (*Id.*)  In connection with his state charges, Plaintiff was

also charged with violating the terms of his federal supervised release, which was imposed as part

of the judgment in a prior federal case.  (*Id.* at ¶ 50.)  Plaintiff was then transferred to federal

custody.  (*Id.* at ¶ 51.)  On September 26, 2019, a federal judge sentenced Plaintiff to two

concurrent 18-month terms of imprisonment for Plaintiff's violation of federal supervised release.

(*Id.* at ¶ 53.)  Plaintiff then pled guilty to the pending state charges, and on February 5, 2020,

Rockland County Judge Kevin Russo imposed an indeterminate sentence of two to four years, to

run concurrent with the federal sentence.  (*Id.* at ¶ 54; *see* Affirmation of Robert C. Barchiesi II in

Opposition to County Defendants' Motion to Dismiss ("First Barchiesi Aff.") at Ex. F, ECF No.

77-6.)  Neither the federal court nor the state court imposed a new term of supervised release.  (*Id.*

at ¶¶ 53–54.)  Pursuant to an agreement between the state and federal authorities, the Federal

Bureau of Prisons ("BOP") administered Plaintiff's sentence.  (*Id.* at ¶ 55.)

BOP released Plaintiff on February 25, 2020.  (*Id.* at ¶ 56.)  Plaintiff was incarcerated from

September 3, 2018 through February 25, 2020, a period of seventeen months and twenty-two days.

As such, he still owed less than six months on his minimum state sentence of two years, and he

owed more than two-and-a-half years on his maximum state sentence of four years.  DOCCS,

however, failed to file a timely detainer with BOP.  (*Id.* at ¶ 56.)  BOP thus never transferred Plaintiff to DOCCS to serve the balance of his sentence.  (*Id.*)

On July 23, 2020, Judge Russo issued a Certificate of Conviction and Order of Commitment.  (Declaration of Robert B. Weissman in Support of County Defendants' Motion to Dismiss ("Weissman Decl.") at Ex. M, ECF No. 72-13.)  The Certificate committed Plaintiff into the custody of the Rockland County Sheriff's Department to serve the remainder of his state sentence.  (*Id.*)  On September 14, 2020, however, Judge Russo denied the County District Attorney's request for a bench warrant.  (SAC at ¶ 58.)  In the proceeding ten months, Plaintiff remained free, "never fleeing the jurisdiction" and "reestablishing his life"; for example, Plaintiff found a job and housing.  (*Id.* at ¶ 59.)

Meanwhile, the Rockland County Sheriff's Department and District Attorney's Office tracked Plaintiff's whereabouts.  (*Id.* at ¶¶ 62–63.)  On June 1, 2021, Defendants Lyons, VanCura, Colon, Kralik, and Budnick followed Plaintiff's car and "cut off" Plaintiff.  (*Id.* at ¶ 64.)  "[J]ump[ing]" out of their unmarked cars, Defendants converged on Plaintiff with "guns drawn," "pulled" Plaintiff out of his car and "threw" Plaintiff against it, and handcuffed him.  (*Id.*)  Defendants arrested Plaintiff without a warrant.  (*Id.* at ¶ 65.)  Defendants drove Plaintiff to the Rockland County Jail, where Plaintiff remained for several weeks.  (*Id.* at ¶¶ 68–70.)  Plaintiff was then transferred to Downstate Correctional Facility to serve the balance of his state sentence.  (*Id.* at ¶ 70.)  Defendants never brought Plaintiff to court, and Plaintiff was never afforded a hearing, "advised as to the reason why his liberties were seized," or "told what he could do to challenge his unlawful arrest and detention."  (*Id.* at ¶ 76.)

Plaintiff retained an attorney, and months later, on August 25, 2021, Plaintiff filed a state habeas petition and an Article 78 petition.  (*Id.* at ¶ 79.)  Plaintiff requested immediate release from

custody, and he also requested time credit for the "periods he was at liberty under the mistaken belief he was free." (*Id.*)  DOCCS released Plaintiff on September 9, 2021. (*Id.* at ¶ 80.)  Upon release from imprisonment, Plaintiff was placed under parole supervision with Defendants Ryan and Johnson-Richardson. (*Id.*)  In light of Plaintiff's release, on November 10, 2021, a state court judge deemed Plaintiff's habeas petition moot, but the judge granted Plaintiff 15 months' time credit for his time at liberty. (*Id.* at ¶ 82.)

Plaintiff asked Defendants Ryan and Johnson-Richardson to help Plaintiff apply this time credit to the balance of his sentence. (*Id.* at ¶ 83.)  Defendants refused. (*Id.* at ¶ 84.)  Instead, they "continued" to "mistreat" and "harass" Plaintiff. (*Id.*)  Months later, on March 23, 2022, a state court judge found DOCCS had not complied with its prior order awarding Plaintiff time credit for his time at liberty. (*Id.* at ¶ 88.)  Plaintiff filed a federal habeas petition on April 23, 2022, to challenge his continued parole supervision. (*Id.* at ¶ 89.)

On May 11, 2022, DOCCS voluntarily terminated Plaintiff's supervision. (*Id.* at ¶ 90.)  In a letter to Plaintiff dated May 11, 2022, DOCCS informed Plaintiff it had terminated his supervision. (*Id.* at ¶ 93.)  Defendants Ryan and Johnson-Richardson were copied on the letter. (*Id.*)  Nonetheless, on May 18, 2022, Defendant Ryan entered Plaintiff's property and summoned him.[1] (*Id.* at ¶ 94.)  Defendant Ryan then "harassed him under the guise that he was still under the supervision of parole." (*Id.*)  Defendant Ryan "smiled" in Plaintiff's face, "smirking," "grinning," and "appearing to take great pleasure in being able to harass and further victimize the Plaintiff." (*Id.* at ¶ 156.)

---

[1] Plaintiff suggests elsewhere in the Complaint that "Parole Officers" "showed up" at Plaintiff's house. (*Compare* SAC at ¶ 94 *with* SAC at ¶ 155.)  It is unclear whether the plural use of "Officers" refers to Defendant Johnson-Richardson as well.

Plaintiff filed the present action on June 1, 2022 and has twice amended the pleadings. (*See* ECF Nos. 3, 23, 42.)  Plaintiff asserts claims for violations of his rights to substantive and procedural due process under the United States Constitution, as well as state law claims for false arrest, intentional infliction of emotional distress, and assault and battery.  (SAC at ¶¶ 96–164.) Defendants now move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  (*See* ECF Nos. 70, 78.)

## LEGAL STANDARDS

### I.      Rule 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555.  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence," this Court "may review only a narrow universe of

materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  As such, the Court looks no further than the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . .  matters of which judicial notice may be taken."  *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## II.    Section 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

Plaintiff brings the following claims:

(1) **False arrest**, in violation of the Fourth and Fourteenth Amendments, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in

6

their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(2) **Malicious prosecution**, in violation of the Fourth and Sixth Amendments, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(3) **False arrest and false imprisonment**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(4) **Intentional infliction of emotional distress**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(5) **Assault and battery**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities; and

(6) **False imprisonment, deliberate indifference, conditions of parole, and unreasonable search**, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments, asserted against Defendants Annucci, Ryan, and Johnson-Richardson in their official and individual capacities.

Defendants move to dismiss these claims on several grounds.

## I.      Preliminary Deficiencies

Plaintiff's claims suffer from several preliminary deficiencies.  The Court turns to these deficiencies first.

### a.   *Monell* Liability

Plaintiff asserts Section 1983 claims for false arrest and malicious prosecution against County Defendants in their official capacities.  (*See* SAC at ¶¶ 96–115.)  Although Plaintiff does not name Rockland County as a defendant, a claim against a Rockland County official in their official capacity "is, in all respects other than name, to be treated as a suit against [Rockland County]." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), "municipalities," such as Rockland County, "are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted).  "[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S at 61.  A "policy" may be established under the following theories:

> "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

"Where the contention is not that the actions complained of were taken pursuant to a [formal] local policy . . . but rather that they were taken or caused by an official whose actions represent official policy," the court considers whether the official implicated "had final policymaking authority in the particular area involved." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). If that inquiry is answered affirmatively, then the actions of the policymaker will lead to liability for the municipality. *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)) (holding county could be held liable for the policy where Sheriff established county jail policy); *cf. Roe v. City of Waterbury*, 542 F.3d 31, 37–38 (2d Cir. 2008) (citing *Jeffes*, 208 F.3d at 57) (noting that the "critical inquiry" is "whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit"). "[C]onclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015).

Here, Plaintiff does not allege the existence of (1) "a formal policy officially endorsed by the municipality," (2) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," or (3) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon*, 705 F. Supp. 2d at 276–77. Instead, Plaintiff alleges "the named county Defendants were the moving force behind" the alleged constitutional violation and "made a deliberate policy decision" to violate the Plaintiff's

constitutional rights.  (SAC at ¶ 101.)  In effect, Plaintiff alleges the existence of "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question." *Brandon*, 705 F. Supp. 2d at 276.  Plaintiff's allegations are vague and fail to identify "direct involvement by a policymaking official." *Perez v. Ponte*, 236 F. Supp. 3d 590, 633 (E.D.N.Y. 2017), *report and recommendation adopted*, No. 16-CV-645 (JFB)(AKT), 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017) (finding no *Monell* liability where "[t]here are no facts alleged which point to a conclusion" that police commissioner "ordered, ratified, or otherwise approved" the decision of a subordinate to transfer plaintiff to a different jail); *accord Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[A] plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them.").  Although Defendants Falco and Walsh lead their departments—the Sheriff's Department and District Attorney's Office, respectively—the pleadings lack sufficient detail linking these supervisory Defendants to the alleged constitutional violations carried out by their subordinates.  *See, e.g., Long v. Cnty. of Orleans*, 540 F. Supp. 3d 344, 353 (W.D.N.Y. 2021) ("Plaintiff's 'vague assertion' of final policymaking authority by Sheriff . . . is simply insufficient to satisfy his burden." (quoting *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011)).  Although Plaintiff concludes Defendants were the "moving force" behind the alleged constitutional violations, Plaintiff does not allege specific facts showing Defendants were "*personally* and directly involved in the constitutional deprivation for the municipality." *Baity v. Kralik*, 51 F. Supp. 3d 414, 441 (S.D.N.Y. 2014) (quoting *O'Connor v. Barnes*, No. 97-CV-1489 (LEK)(DNH), 1998 WL 1763959, at *6 (N.D.N.Y. Mar. 18, 1998)) (emphasis in original).

Accordingly, because Plaintiff's allegations lack the specificity necessary for the Court to attribute the alleged constitutional violations to the County itself, the Court dismisses with prejudice Plaintiff's *Monell* claims. *Compare Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *19–20 (S.D.N.Y. Aug. 25, 2017) (finding that plaintiff "only barely" stated a *Monell* claim where sheriff "was *directly involved*" in transferring plaintiff to jail and possessed "knowledge" of plaintiff's "mental health issues" (emphasis in original)).

  b.  Eleventh Amendment

Plaintiff also brings Section 1983 claims against the State Defendants in their official capacities. (*See* SAC at ¶¶ 137–164.) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . . that are, effectively, arms of a state."). State officials therefore cannot be sued in their official capacities for retrospective relief, including damages, under Section 1983. *Will*, 491 U.S. at 71. Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief. *Id.* at 71 n. 10 (citing *Ex parte Young*, 209 U.S. 123, 159–160 (1908)) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State.").

The State Defendants are employed by the State of New York, and thus damages are available against them in their official capacities only to the extent that damages would be available against the State. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp*, 568 F.3d at 366. "New York has not waived

its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983." *Al Javier v. Russo, et al.*, No. 21-CV-7097 (LTS), 2021 WL 4252061, at *5 (S.D.N.Y. Sept. 17, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

"[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff's request for money damages pursuant to Section 1983 is retrospective, as it seeks damages for past conduct and is therefore barred by the Eleventh Amendment. Plaintiff's request for declaratory relief is likewise barred. *See Mateo v. Westchester Cnty.*, No. 18-CV-3499 (NSR), 2020 WL 5802838, at *5 (S.D.N.Y. Sept. 29, 2020) ("Additionally . . . absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past.").

Plaintiff separately seeks prospective injunctive relief in the form of an order enjoining the State Defendants from "subjecting Plaintiff[] and those similarly situated from violating the rights of prisoners who may have been released early, and subject to owing New York additional time on their state sentences from being re-arrested and incarcerated without due process of law." (SAC at Prayer for Relief ¶ ii.) With respect to Plaintiff's claim for injunctive relief, Plaintiff does not contend that an ongoing violation of federal laws is occurring. *See Pierre v. New York State Dep't of Corr. Servs.*, No. 05-CV-275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (finding that an isolated incident of alleged disability discrimination, in conjunction with conclusory

12

language requesting unspecified injunctive relief is insufficient for purposes of *Ex parte Young*).

Plaintiff's alleged injuries stem only from past conduct with no plausible threat to himself of future

violations. *See Li v. Lorenzo*, 712 F. App'x 21, 23 (2d Cir. 2017) (concluding relief sought was

"not prospective" where plaintiff's "disciplinary proceedings ha[d] ended" and he alleged injuries

"stemming only from past conduct with no plausible threat of future violations."). Accordingly,

as pled, Plaintiff's request for injunctive relief is also barred by the Eleventh Amendment. *E.g.,*

*Bright v. Annucci*, No. 18-CV-11111 (NSR), 2021 WL 4461682, at *16 (S.D.N.Y. Sept. 28,

2021).[2]

      c.  <u>Personal Involvement</u>

      The State Defendants urge the Court to dismiss Plaintiff's claims against them because

Plaintiff fails to allege personal involvement in the alleged misconduct. (*See* State Defendants'

Memorandum of Law in Support of State Defendants' Motion to Dismiss ("State Mem.") at 6–9,

ECF No. 79.) With two exceptions, Defendants are correct.

      To state a claim under Section 1983, a plaintiff must allege facts showing the defendants'

direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y.*

*State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that

personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to

an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be

held liable under Section 1983 solely because that defendant employs or supervises a person who

violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government

---

[2] Plaintiff also seeks injunctive relief on behalf of others "similarly situated." Even if this proposed injunctive relief is prospective, Plaintiff does not have standing to seek such relief. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). In addition, a plaintiff cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Eisenberg v. Cnty. of Westchester*, No. 21-CV-4507 (VB), 2022 WL 768311, at *2 (S.D.N.Y. Mar. 14, 2022) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).

At the outset, Plaintiff neglects to include *any* factual allegations regarding Defendant Annucci's role in the alleged constitutional violations. Plaintiff's claims against Defendant Annucci in his individual capacity are dismissed without prejudice.

Plaintiff fails to plausibly allege Defendants' participation in the calculation of Plaintiff's time credits.[3] At no point does Plaintiff articulate why a parole officer had a constitutional duty to assist Plaintiff in applying his sentencing credits. *See Richardson v. Dep't of Corr. of N.Y.S.*, No. 10-CV-6137 (SAS), 2011 WL 4091491, at *5 (S.D.N.Y. Sept. 13, 2011) (dismissing claim for lack of personal involvement where plaintiff assumed prison official had "personal obligation" to plaintiff to prevent constitutional violation). Without additional factual allegations, the Court cannot infer Defendants Ryan and Johnson-Richardson were responsible for calculating Plaintiff's time credits; instead, records integral to the pleadings reveal Plaintiff knew the Office of Sentencing Review was responsible for calculating remaining time on his sentence (*see* Declaration of Robert C. Barchiesi II in Opposition to County Defendants' Motion to Dismiss ("Barchiesi Decl.") at Ex. 5, ECF No. 82-5.) Accordingly, Plaintiff's Eighth Amendment claims

---

[3] In general, Plaintiff also fails to allege specific acts by either Defendant Ryan or Johnson-Richardson, instead lumping them together as one. See *Eisenberg*, 2022 WL 768311, at *2.

against Defendants Ryan and Johnson-Richardson are dismissed without prejudice.  So too are Plaintiff's Fourth Amendment claims, as Plaintiff alleges "DOCCS," not a specific official, "conspire[d] with the County Defendant[s] to "re-incarcerate the Plaintiff."   (SAC at ¶ 139.) Again, Plaintiff fails to allege the personal involvement of Defendants Ryan and Johnson-Richardson in the alleged constitutional violation.  Lastly, the pleadings are unclear as to whether Defendant Johnson-Richardson showed up at Plaintiff's house on May 11, 2022, *see supra* at 4. In one allegation, Plaintiff alleges Defendant Ryan alone trespassed upon Plaintiff's property; in another, Plaintiff alleges "Parole Officers" were involved.  (*Compare* SAC at ¶ 94 with ¶ 155.) Because Plaintiff's allegations contradict themselves, the Court dismisses without prejudice Plaintiff's unreasonable search claim asserted against Defendant Johnson-Richardson.

> d.  New York Corrections Law § 24

The State Defendants argue Corrections Law § 24 bars Plaintiff from asserting state law claims against the State Defendants in their individual capacities.  (*See* State Mem. at 9–10.)  The Court agrees, though the Court notes that Plaintiff did not explicitly assert any state law claims against the State Defendants.

New York Corrections Law provides as follows:

> "(1) No civil action shall be brought in any court . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.  (2)  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state."

N.Y. Corr. Law § 24(1) & (2) ("Section 24") (emphasis added).  The Second Circuit has long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state officers in their personal capacities for alleged actions arising within the scope of their

employment. *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996) ("Appellants are entitled to invoke the benefits of § 24 irrespective of the forum in which [plaintiff] chooses to pursue her claims. Because a New York court would have dismissed [the] claims against [the defendants] pursuant to § 24, the district court should have done so."). Even after the Supreme Court's decision in *Haywood v. Drown*—where the Court held that New York "is not at liberty to shut the courthouse door to federal claims," like Section 1983 claims, "that it considers at odds with its local policy," 556 U.S. 729, 740 (2009)—Section 24 continues to bar state law claims against DOCCS officers that are not brought to the Court of Claims unless the individuals acted outside their scope of employment. *See, e.g., Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) ("Because such claims would be barred in New York state courts, this Court equally lacks jurisdiction over the claims.").

Plaintiff alleges no facts to suggest that the State Defendants acted outside of the scope of their traditional employment duties. To the extent Plaintiff intended to assert state law claims against the State Defendants, those claims are dismissed without prejudice.

In sum, the following claims remain:

(1) **False arrest**, in violation of the Fourth and Fourteenth Amendments, asserted against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(2) **Malicious prosecution**, in violation of the Fourth and Sixth Amendments, asserted against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(3) **False arrest and false imprisonment**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their

official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(4) **Intentional infliction of emotional distress**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities;

(5) **Assault and battery**, in violation of state law, asserted against Defendants Falco, Walsh, Lyons, Colon, Kralik, VanCura, and Budnick in their official capacities and against Defendants Lyons, Colon, Kralik, VanCura, and Budnick in their individual capacities; and

(6) **Unreasonable search**, in violation of the Fourth and Fourteenth Amendments, asserted against Defendant Ryan in her individual capacity.

(7) **Conditions of parole**, in violation of the Fourteenth Amendment, asserted against Defendants Ryan and Johnson-Richardson in their individual capacities.

The Court addresses each below, starting with the federal claims and then proceeding to the state law claims.

## II.    Remaining Section 1983 Claims

### a.   False Arrest / Malicious Prosecution

Plaintiff asserts Section 1983 claims for false arrest and malicious prosecution.  (SAC at ¶¶ 96–115.)  The County Defendants argue they had probable cause to arrest Plaintiff, thus constituting a complete defense to both claims.  (County Defendants' Memorandum of Law in Support of County Defendants' Motion to Dismiss ("Cnty. Mem.") at 19–21, ECF No. 71.)  In the alternative, the County Defendants argue they are entitled to qualified immunity because they had

"arguable probable cause" to arrest Plaintiff.  (*Id.* at 21–22.)   The Court agrees the County Defendants had probable cause to arrest Plaintiff.

To state a false arrest claim under Section 1983, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 NY2d 451, 456 (1975)).   "An arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013). Thus, probable cause "is an absolute defense to a false arrest claim" brought under New York law or Section 1983." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)).

To state a malicious prosecution claim under Section 1983, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."  *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).  As with a false arrest claim, "probable cause is a complete defense to a constitutional claim of malicious prosecution," *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014), albeit the probable cause standard in a malicious prosecution claim is "slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013); *see Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (describing probable cause, in the context of malicious prosecution, as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty").

"Even in the absence of probable cause," an officer is entitled to qualified immunity if the officer had "*arguable* probable cause" to arrest. *Betts*, 751 F.3d at 82–83 (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)); *see Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (observing that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks omitted). In particular, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994).

Probable cause exists here. Judge Russo, the same judge who imposed a sentence upon Plaintiff on February 5, 2020, issued a Certificate of Conviction and an Order of Commitment less than six months later. (Weissman Decl. at M.) Even though Judge Russo later denied the County's request for a bench warrant to arrest Plaintiff (SAC at ¶ 58), Judge Russo's prior order vested the County Defendants with authority to arrest and re-incarcerate Plaintiff. *See Walker v. Perlman*, 556 F. Supp. 2d 259, 268 (S.D.N.Y. 2008) ("[A] certificate of conviction shows the sentence pronounced by the court, [ ] constitutes the authority for execution of the sentence and serves as the order of commitment, and *no other warrant, order of commitment or authority is necessary* to justify or to require execution of the sentence." (citing N.Y.C.P.L § 380.60) (emphasis added)); *Nazario v. State*, 884 N.Y.S.2d 580, 587 (Ct. Cl. 2009), *aff'd*, 905 N.Y.S.2d 328 (3d Dep't 2010) ("Absent an allegation in the claim, express or inferable, that the parole warrant or order of commitment was invalid on its face or that the issuing entity lacked jurisdiction to issue the

warrant, a claim for false arrest and false imprisonment lacks merit as a matter of law." (internal quotations omitted) (collecting cases)).  Viewed in conjunction with the Certificate of Conviction and Order of Commitment issued by the sentencing judge, Plaintiff's allegations make clear that the County Defendants had "reasonably trustworthy information of facts and circumstances" "sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation and alterations omitted).  The pleadings thus foreclose any question as to whether Plaintiff committed the state crime for which he was re-incarcerated.  The answer is yes, and for that reason, the County Defendants had probable cause to arrest Plaintiff.  The Court dismisses without prejudice Plaintiff's Section 1983 claims for false arrest and malicious prosecution.[4]

     b.  <u>Procedural Due Process</u>

Plaintiff grounds his above-stated malicious prosecution claim in the Fourth and Sixth Amendments.[5]  Plaintiff, however, also alludes to notions of "procedural due process."  (*See generally* SAC at ¶¶ 109–115.)  To the extent Plaintiff is in fact asserting a procedural due process claim, the claim is likewise dismissed because Plaintiff failed to plead personal involvement and arguably abandoned his claim.

The Due Process Clause guarantees "freedom from bodily restraint."  *E.g., Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972).  To that end, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."  *Hurd v. D.C., Gov't*, 864 F.3d 671, 683

---

[4] For the same reasons, dismissal is likewise "appropriate" for Plaintiff's false arrest and false imprisonment claims asserted under state law.  *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022) (citing *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016) ("For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause.").

[5] It is well-established that the Fourth Amendment—not the Sixth—is the basis for a malicious prosecution claim.  *See Albright v. Oliver*, 510 U.S. 266, 274 (1994).

(D.C. Cir. 2017) (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (pre-parole conditional supervision); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation); and *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parole)); *cf. Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("No one is to be deprived of life, liberty or property without due process, lest the innocent suffer.").

In *Morrisey*, the Supreme Court held that a parolee had a conditional liberty interest in the revocation of parole, thus triggering due process protection prior to re-incarceration. *See Morrissey*, 408 U.S. at 482–86. The Court so held even though the parolee was subject to re-incarceration at any time for failing to comply with parole conditions. *Id.* at 482. The Court reasoned that the parolee possessed "liberty" that "enable[d] him to do a wide range of things open to persons who have never been convicted of a crime." *Id.* The parolee could pursue "gainful[] employ[ment]" and "is free to be with family and friends and to form the other enduring attachments of normal life"; though subject to "many restrictions not applicable to other citizens," the parolee's "condition is very different from that of confinement in a prison." *Id.* In sum, the liberty of the parolee—though conditional—"includes many of the core values of unqualified liberty." *Id.* "By whatever name," this liberty interest is "valuable" and merits constitutional protection in the form of "some orderly process, however informal." *Id.*

*Morrisey*'s reasoning may apply in the context of erroneous release too. The distinction between parole and erroneous release is not dispositive. Where a plaintiff alleges facts "that support a liberty interest [which has] crystallized sufficiently," that plaintiff is entitled to "some kind of process before re-incarceration." *Hurd*, 864 F.3d at 683. That is especially true where a "person lives in society at large for years, goes through a transition that, by all appearances, marks the formal end of the last stage of his sentence, and only then faces re-incarceration on the ground

21

that he was prematurely released."[6]  *Id.* (applying *Morrisey*'s reasoning to plaintiff who had completed term of supervised release but faced re-incarceration because he was erroneously released from prior term of imprisonment).  Under such circumstances, "the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*."  *Id.*  Even where, as here, a person is erroneously released from prison and thus subject to re-incarceration, that person may still plead facts that "support a liberty interest [which has] crystallized sufficiently," *id.*, entitling that person to *some* level of process, however informal.

Citing decisions from other circuits, the County Defendants argue a "a convicted felon has no due process right to a hearing before being re-incarcerated to serve the remainder of a sentence following an erroneous release."  (Cnty. Mem. at 19 (citing *Jenkins v. Currier*, 514 F.3d 1030, 1034–35 (10th Cir. 2008) and *Henderson v. Simms*, 223 F.3d 267, 273–75 (4th Cir. 2000)).)  Respectfully, the Court does not find the analysis in these opinions to be persuasive.  Relying on a decades-old Arizona Supreme Court opinion and a district court opinion from the Central District

---

[6] Similar circumstances may give rise to a substantive due process claim: "A delay in criminal proceedings that 'violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency,' can, depending on the circumstances, constitute a violation of the Due Process Clause." *United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).  In determining whether a defendant violates a plaintiff's due process right, a court "must balance 'the reasons for the delay' against 'the prejudice to the accused.'"  *United States v. Nouri*, No. 07-CR-1029 (DC), 2015 WL 3900436 (S.D.N.Y. June 24, 2015) (Chin, J) (quoting *Ray*, 578 F.3d at 199) (denying habeas petition where two years passed between imposition of petitioner's sentence and incarceration because BOP never designated a facility).

Other jurisdictions have provided guidance as to relevant factors that may prove helpful in weighing "the reasons for the delay" against "the prejudice to the accused."  These factors include as follows: "the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his re-incarceration must be unequivocally inconsistent with fundamental principles of liberty and justice." *Hurd*, 864 F.3d at 685 (quoting *United States v. Merritt*, 478 F. Supp. 804, 807 (D.D.C. 1979)).  These factors capture whether government action so "shocks the conscience" as to be "arbitrary in the constitutional sense."  *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "[I]ndifference is truly shocking" where "officials have 'the luxury' of 'time to make unhurried judgments,' and 'such extended opportunities to do better are teamed with protracted failure even to care.'"  *Id.* (quoting *Lewis*, 523 U.S. at 854).  *But see Nouri*, 2015 WL 3900436, at *5 ("While a number of Circuits have applied this 'conscious-shocking' test to claims of due process violations arising from delayed incarceration or re-incarceration following erroneous release from custody, the Second Circuit has not done so.").

of Illinois, the *Henderson* Court summarily pronounces, "A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom."  223 F.3d at 274 (citing *Campbell v. Williamson*, 783 F.Supp. 1161, 1164 (C.D. Ill. 1992) and *McKellar v. Arizona State Dep't of Corrections*, 566 P.2d 1337, 1339 (Ariz. 1977)).  At no point does the *Henderson* Court articulate *why* the liberty interest of a "prisoner who is mistakenly released" pales in comparison to the parolee.  The *Jenkins* Court simply parrots the reasoning of the *Henderson* Court with little additional analysis.  514 F.3d at 1035 (quoting *Henderson*, 223 F.3d at 274–75).  The *Jenkins* Court adds that any process afforded to an erroneously released prisoner would amount to "nothing" because the "state would have to assert the fact that [the prisoner] has not yet served [his full term of imprisonment], and to that assertion [the prisoner] has no defense."  *Id.* (citing *McKellar*, 566 P.2d at 1339).

It is axiomatic, however, that due process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all.  *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner." (citations and quotations omitted)); *see also* Richard B. Sapphire, *Specifying Due Process Values: Toward A More Responsive Approach to Procedural Protection*, 127 U. Pa. L. Rev. 111, 123–25 (1978) ("[F]airness in government-individual relations can never be defined solely in terms of outcomes, nor even in terms of the fact-producing mechanisms upon which those outcomes depend; rather, the processes of interaction themselves are always important in their own right.").  That is especially true where, as here, Plaintiff had a colorable argument regarding his time credits. *Compare Hurd*, 864 F.3d at 684 ("A timely hearing could also have allowed Hurd to present his

substantive claims against re-incarceration.") *with* SAC at ¶¶ 82, 88 (alleging that state court awarded Plaintiff credit for time at liberty).

Evolving caselaw in the Second Circuit reinforces the existence of this right to process.  In a well-reasoned opinion issued months ago by Judge Omar Williams of the District of Connecticut, a district court granted a federal prisoner's habeas petition where petitioner presented sufficient evidence to establish a liberty interest in continued home detention.  *See Freeman v. Pullen*, No. 22-CV-1567 (OAW), 2023 WL 2329526 (D. Conn. Mar. 2, 2023).  Observing first that courts have long held that participants in pre-parole, parole, and work release programs have liberty interests in avoiding revocation of such programs, *see Young v. Harper*, 520 U.S. 143 (1997) (pre-parole), *Morrissey v. Brewer*, 408 U.S. 471 (1972) (parole), and *Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999) (work release), Judge Williams reasoned that "home confinement" "bears the same essential features" as work release, pre-parole, and parole programs.  *Freeman*, 2023 WL 2329526, at *4–5 (D. Conn. Mar. 2, 2023).  Where a person is "able to work," "able to go to school," and "able to reunite [their] family," that person "enjoy[s] substantial liberty."  *Id.* (quoting *Tompkins v. Pullen*, No. 22-CV-339 (OAW), 2022 WL 3212368, at *11 (D. Conn. Aug. 9, 2022) (Williams, J.)).  This liberty "includes many of the core values of unqualified liberty."  *Tompkins*, 2022 WL 3212368, at *11 (quoting *Morrissey*, 408 U.S. at 482).  The termination of such unqualified liberty "calls for some orderly process, however informal."  *Id.* (quoting *Morrissey*, 408 U.S. at 482).

The reasoning in this line of cases applies with force to the present context.  Even conceding the obvious difference between participants in pre-parole, parole, work release, and home detention programs and persons erroneously released from prison—principally, the former are lawfully "free" under pre-determined conditions whereas the latter are not—it cannot be said that persons erroneously released have *no* liberty interest, however conditional, in the lives they

24

build upon release.  To say otherwise would lead to absurd results: *e.g.,* a person sentenced to 98 years in prison is erroneously paroled after eight years, moving on to build a family and become an active member of the community only to later be returned to prison for another three years, *see generally Lima-Marin v. Raemisch*, No. 16-cv-31216, slip op. at 11–50 (Colo. D. Ct., Arapahoe County, May 16, 2017).  Not providing process in such circumstances violates a person's constitutional rights.

Notwithstanding the foregoing analysis, Plaintiff fails to plausibly allege that County Defendants participated in the alleged constitutional violation, here depriving Plaintiff of "some orderly process, however informal."[7]  *Morrissey*, 408 U.S. at 482.  Although Plaintiff alleges the County Defendants arrested and detained Plaintiff, Plaintiff does not articulate who is responsible for depriving Plaintiff of process.  Moreover, Plaintiff appears to have abandoned this procedural due process claim, as Plaintiff ignored the County Defendants' argument that no right to process exists for a person erroneously released and re-incarcerated.  Plaintiff's claim is dismissed without prejudice.

     c.  <u>Unreasonable Search</u>

Plaintiff also brings a Section 1983 claim against Defendant Ryan for an unreasonable search in violation of the Fourth Amendment.  (*See* SAC at ¶¶ 154–56.)  Plaintiff alleges Defendant Ryan trespassed onto his property and summoned Plaintiff, even though Defendant had no warrant and Plaintiff was no longer subject to parole.  (*Id.*)

---

[7] The County Defendants argue the right at issue is not "clearly established" and thus qualified immunity protects them from liability.  (Cnty Mem. at 18–19.)  The Court refrains from ruling on the County Defendants' qualified immunity argument.  Given Plaintiff's insufficient pleadings, the Court is unable to resolve the defense at this early stage in the proceedings.  *See Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020).

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The contours of a search and seizure under the Fourth Amendment are well-defined. A search occurs when "'the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *United States v. Lambis*, 197 F.Supp.3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A search also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information. *El-Nahal v. Yassky*, 993 F.Supp.2d 460, 467 (S.D.N.Y. 2014). Parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Once parole expires, however, the former parolee again enjoys the full protection of the Fourth Amendment, including the well-settled right to be free from warrantless searches. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971) ("[A] search or seizure carried out on a suspect's premises without a warrant is per se unreasonable.").

Plaintiff states a claim. Even though Defendant Ryan may have "had valid consent to search if the facts were as [she] reasonably believed them to be," *United States v. Brown*, 961 F.2d 1039, 1041 (2d Cir. 1992), the Court is bound to take Plaintiff's allegations as true. Taking the allegations as true, Defendant was copied on correspondence dated May 11, 2022, in which DOCCS terminated Plaintiff's term of parole. (SAC at ¶ 93.) Despite allegedly receiving notice of this termination, Defendant still trespassed upon Plaintiff's property a week later and summoned him for a meeting "under the guise that [Plaintiff] was still under the jurisdiction of Parole and DOCCS." (SAC at ¶¶ 94, 155.) Although discovery may reveal Defendant had no notice of the termination of Plaintiff's parole, Defendant's actions as alleged constitute a warrantless search of

Plaintiff's property.  *Cf. Trask v. Franco*, 446 F.3d 1036, 1042–45 (10th Cir. 2006) (reversing grant of qualified immunity where "probation officers acknowledge[d] that their search of [a] residence was based on the mistaken belief that [plaintiff] remained on probation," but "material factual dispute exist[ed] as to whether the probation officers reasonably believed that [plaintiff] was still on probation" at the time of the warrantless search).

    d.  <u>Conditions of Parole</u>

Plaintiff also alleges Defendants Ryan and Johnson-Richardson imposed parole conditions that violated Plaintiff's substantive due process rights.  (*See* SAC at ¶¶ 143–48.)  Plaintiff challenges parole conditions prohibiting Plaintiff from operating a motor vehicle, requiring Plaintiff to attend drug and alcohol treatment and counseling, and prohibiting Plaintiff from residing with his romantic partner.  (*Id.*)

"Because the imposition of special conditions is left to the discretion of the Board of Parole and parole officers," a plaintiff *ordinarily* "does not have a protected liberty interest in being free from special conditions."  *E.g., Pena v. Travis*, No. 01-CV-8534 (SAS), 2002 WL 31886175, at *13 (S.D.N.Y. Dec. 27, 2002).   These conditions, however, are still subject to judicial review. Upon judicial review, "the imposition of conditions—whether imposed prior to or subsequent to release, by the parole board or a field parole officer—must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses."  *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 298–99 (E.D.N.Y. 2018) (citations omitted) (collecting cases).  Although a plaintiff must "provide enough information concerning his underlying crimes to plausibly allege that those conditions are not reasonably related to his prior conduct," that plaintiff need not "establish the lack of a rational relationship between these parole conditions and his criminal history by describing in detail the

facts underlying his crime of conviction as found at trial and explaining why the parole conditions are unreasonable or unnecessary despite the actions for which he was convicted." *Scott v. Rosenberger*, No. 19-CV-1769 (CS), 2020 WL 4274226, at *7 (S.D.N.Y. July 24, 2020) (citation omitted).

The Court takes judicial notice of Plaintiff's prior DUI arrest, which formed the underlying conduct of the crime for which Plaintiff was subjected to special parole conditions (*see* Weissman Decl. at Ex. K (noting criminal charge for "DWI")).[8] *See Aurecchione v. James*, No. 22-CV-3323 (JPC)(SLC), 2023 WL 1472782, at *2 (S.D.N.Y. Jan. 11, 2023), *report and recommendation adopted*, No. 22-CV-3323 (JPC)(SLC), 2023 WL 1471886 (S.D.N.Y. Feb. 2, 2023) ("On September 3, 2018, Aurecchione was arrested for unlawful possession of a firearm and driving while intoxicated, and detained in the Rockland County Correctional Facility in Rockland County, New York."). The Court sees a reasonable relation between Plaintiff's recent history of operating a vehicle under the influence of alcohol and Defendants' refusal to allow Plaintiff to drive, as well as Defendants' requirement that Plaintiff attend drug and alcohol treatment and counseling. With respect to these drug and alcohol-related conditions, Plaintiff's claim is dismissed without prejudice.

The Court also takes judicial notice of Plaintiff's prior criminal contempt conviction, in which Plaintiff violated an order of protection for a romantic partner. (Declaration of David T. Cheng in Support of State Defendants' Motion to Dismiss at Ex. 6, ECF No. 80-6.) Nearly twenty years have passed since Plaintiff violated the order of protection. Even though a parole officer

---

[8] The Court may consider documents subject to judicial notice, such as public records. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Awelewa v. New York City*, No. 11-CV-778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'"); *Blount v. Moccia*, No. 16-CV-4505 (GHW), 2017 WL 5634680, at *2 n.5 (S.D.N.Y. Nov. 21, 2017) (taking judicial notice of grand jury indictment and collecting cases); *Colliton v. Bunt*, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (taking judicial notice of transcript of guilty plea and sentencing).

may account for a parolee's "past conduct," *see Trisvan*, 284 F. Supp. 3d at 298–99, the passage of time renders onerous a parole condition prohibiting Plaintiff from living with his romantic partner.   That is especially true where there is nothing to suggest that (1) Plaintiff's romantic partner was involved in that prior incident or (2) Plaintiff has committed similar acts since then. Because Plaintiff's prior conduct and the parole condition are attenuated by the passage of time, Plaintiff plausibly alleges the parole condition is arbitrary and capricious.   Plaintiff states a claim. The Court rejects State Defendants' motion to dismiss on qualified immunity grounds.   It is well-settled that conditions of parole must be "reasonably related" to a "parolee's past conduct," *Trisvan v. Annucci*, 284 F. Supp. 3d at 298–99 (collecting cases), and "all parole officers should be aware of this fundamental legal principle setting the parameters of the conditions they may or may not impose," *Rosenberger*, 2020 WL 4274226, at *12.   Discovery, however, is necessary to determine whether (1) "Plaintiff's right to be free from all or some of his special conditions, given the facts and circumstances of his case, was not clearly established" and (2) "no reasonable parole officer in the position of Defendants could have thought the restrictions to be constitutional."   *Id.*   At this early stage, the pleadings do not provide sufficient factual detail upon which to grant dismissal on the grounds of qualified immunity.   *See Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020)

### III.   State Law Claims

#### a.   Intentional Infliction of Emotional Distress

Plaintiff asserts a state law claim for intentional infliction of emotional distress.   (*See* SAC at ¶¶ 123–130.)   Plaintiff alleges that his false arrest and imprisonment caused him "severe mental anguish."   (*Id.* at ¶ 124.)

29

At the outset, it is well-established that a plaintiff cannot sustain a claim for intentional infliction of emotional distress against a government entity. *See, e.g., Rivera v. City of New York*, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005). Moreover, "state courts and federal courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory. *See Brewton v. City of New York*, 550 F.Supp.2d 355, 370 (E.D.N.Y. 2008) (collecting cases). Because "the conduct comprising [plaintiff's] intentional infliction of emotional distress claim is encompassed entirely within [his] state law claims for false arrest and malicious prosecution, this cause of action must be dismissed for it does not lie as a matter of state law." *Id.*

Accordingly, the Court dismisses without prejudice Plaintiff's intentional infliction of emotional distress claim asserted against the County Defendants.

      b.  <u>Assault and Battery</u>

Plaintiff also asserts a state law claim for assault and battery. (SAC at ¶¶ 131–136.) Plaintiff alleges the County Defendants "pulled over Plaintiff in his vehicle, pulled him out his truck, threw him up against the vehicle, and forcefully arrested him without provocation." (*Id.* at ¶ 132.)

"Under New York Law, an 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001); *accord Stanley v. Amalithone Realty, Inc.*, 31 Misc.3d 995, 1006, 921 N.Y.S.2d 491 (Sup. Ct. N.Y. Cty. 2011) (finding claim for assault where a person intentionally attempts or threatens to cause injury or commit a battery). To recover damages for assault, "there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Stanley*, 31 Misc.3d at 1006 (citing *Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 336, 693 N.Y.S.2d 516 (1st Dep't

1999)).   Similarly, "a battery is an intentional wrongful physical contact with another person

without consent," *Girden*, 262 F.3d at 203, "either personally or by means of an instrumentality,"

*Aberbach v. Biomedical Tissue Servs.*, Ltd., 48 A.D.3d 716, 718, 854 N.Y.S.2d 143 (2d Dep't

2008).

 To succeed on an assault or battery claim in the law enforcement context, a plaintiff must

demonstrate that defendants' conduct "was not reasonable within the meaning of the New York

statute concerning justification for law enforcement's use of force in the course of performing their

duties." *Torres–Cuesta v. Berberich*, 511 F. App'x 89, 91 (2d Cir. 2013) (quoting *Nimely v. City

of New York*, 414 F.3d 381, 391 (2d Cir. 2005)); *see* N.Y. Penal L. § 35.30(1); *see also Graham v.

City of New York*, 928 F.Supp.2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and

state law assault and battery claims against police officers are nearly identical." (citing *Humphrey

v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009) (summary order)).   In either case, where an

arrest is determined to be unlawful, any use of force may constitute an assault and battery.

*Sulkowska v. City of New York*, 129 F.Supp.2d 274, 294 (S.D.N.Y. 2001) (citing *Johnson v. Suffolk

Cty. Police Dep't*, 245 A.D.2d 340, 341, 665 N.Y.S.2d 440 (2d Dep't 1997) (holding that police

officer committed battery by touching plaintiff during unlawful arrest)).

 Because Plaintiff's arrest was supported by probable cause, *see supra* at 19–20, Plaintiff's

arrest was lawful.   *Stone v. Port Auth. of New York & New Jersey*, No. 11-CV-3932 (SMG), 2014

WL 3110002, at *6 (E.D.N.Y. July 8, 2014) (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149,

155 (2d Cir. 2013)).   When force is used in the context of a lawful arrest, such force must be

"serious or harmful" and not "de minimis."   *Drummond v. Castro*, 522 F.Supp.2d 667, 678–79

(S.D.N.Y. 2007).   "De minimis injury can serve as conclusive evidence that de minimis force was

used."   Washpon v. Parr, 561 F. Supp. 2d 394 (S.D.N.Y. 2008).

Plaintiff, however, alleges no injury, let alone a de minimis one.  Plaintiff's allegations are insufficient to state an assault and battery claim in the context of a *lawful* arrest.  The Court dismisses without prejudice Plaintiff's assault and battery claim asserted against the County Defendants.

## CONCLUSION

The County Defendants' motion to dismiss is GRANTED.  The State Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The following claims may proceed:

(1)  **Unreasonable search**, in violation of the Fourth and Fourteenth Amendments, asserted against Defendant Ryan in her individual capacity.

(2) **Conditions of parole**, in violation of the Fourteenth Amendment, asserted against Defendants Ryan and Johnson-Richardson in their individual capacities, with respect to the parole condition prohibiting Plaintiff from residing with his romantic partner.

All other claims are dismissed without prejudice.  Plaintiff is granted leave to file an Amended Complaint.  If Plaintiff chooses to do so, Plaintiff shall file the Amended Complaint no later than October 25, 2023.  Defendants are then directed to answer or otherwise seek leave to move in response to the Amended Complaint no later than November 15, 2023.  Failure to timely amend will result in claims previously dismissed without prejudice being deemed dismissed with prejudice.  The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 70 and 78.

SO ORDERED.

Dated:    September 25, 2023
          White Plains, New York

_____
        NELSON S. ROMÁN
      United States District Judge