#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PHILIP S. AURECCHIONE** <br> Plaintiff <br><br> vs. <br><br> **SHERIFF LOUIS FALCO III OF THE ROCKLAND COUNTY SHERIFF'S DEPARTMENT (OFFICIAL CAPACITY); DISTRICT ATTORNEY TOM WALSH OF THE ROCKLAND COUNTY DISTRICT ATTORNEY'S OFFICE (OFFICIAL CAPACITY); DEFENDANT OFFICERS SEAMUS LYONS, KERRI KRALIK, MARK COLON, JAMES VANCURA, AND INV. BUDNICK OF THE ROCKLAND COUNTY SHERIFF'S DEPARTMENT (OFFICIAL and INDIVIDUAL CAPACITY); ACTING COMMISSIONER ANTHONY J. ANNUCCI NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (OFFICIAL CAPACITY); PAROLE OFFICERS DIERDRE RYAN AND LYNN JOHNSON-RICHARDSON (OFFICIAL CAPACITY AND INDIVIDUAL CAPACITY)** <br> Defendants. | NO. 7:22-CV-04538-NSR <br><br> 3rd Amended Complaint under 42 U.S.C. § 1983 *et. seq.* <br><br> ***JURY TRIAL DEMANDED*** |

#### **THIRD AMENDED COMPLAINT**

**AND NOW** comes Plaintiff Philip S. Aurecchione, by and through his undersigned counsel, who file the within Third Amended Complaint pursuant to this Court's Order of September 25, 2023 (ECF Doc. No. 88) granting Plaintiff leave to amend his pleadings against the named Defendants in pursuit of Plaintiff's claims arising under 42 U.S.C. § 1983 *et. seq.* upon the following facts and circumstances:

## NATURE AND CAUSE OF ACTION

1. This lawsuit is rooted in the actions of Rockland County Law Enforcement and the New York State Department of Corrections and Community Supervision ("DOCCS"). Central to this case are the Plaintiff's unwarranted arrest, the excessive delay in its execution, and the subsequent denial of his procedural due process rights by Rockland County Officers. This suit also highlights the subsequent actions taken by Plaintiff's parole officer(s) to impose arbitrary conditions and carry out further violations of his civil liberties after his sentence was lawfully terminated. Collectively, these events signal a deep infringement on the Plaintiff's civil liberties.

## PARTIES

2. The Plaintiff is Phillip S. Aurrecchione, an adult individual residing at 1772 Rt. 300, Newburgh, New York 12550.

3. Defendant Officers Seamus Lyons, James VanCura, Mark Colon, Kerri Kralik, and Inv. Budnick, hereinafter referred to as "Defendant Officers," were, during all pertinent times hereto, employed either by the Rockland County Sheriff or the District Attorney's Office as sworn law enforcement officers. These officers, in unison, played direct roles in both the investigation and subsequent arrest of the Plaintiff, thereby jointly infringing upon the Plaintiff's Constitutional rights.

4. Defendant Parole Officers Diedre Ryan and her Supervising Officer Lynn Johnson-Richardson are employed by the New York State Department of Corrections and Community Supervision and were the Plaintiff's Parole Officers against whom he has alleged constitutional rights violations.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(3); 42 U.S.C. § 1983; and/or pursuant to 28 U.S.C. § 1331 under general federal question jurisdiction.

6. This Court also has supplemental jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a), as the claims are so related and arise out of a common nucleus of operative facts.

7. Moreover, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims is in this district.

### JURY TRIAL DEMAND

8. Pursuant to R. 38(b) of the F.R.C.P., Plaintiff hereby demands a trial by jury on any of the triable issues presented herein.

### PROCEDURAL HISTORY OF STATUTORY NOTICE OF CLAIM

9. On June 1, 2022, Plaintiff sought leave to file a late notice of claim pertaining to his June 1, 2021 arrest by the Rockland County Defendants in relation to the anticipated state law claims filed in the within Complaint. The Rockland County Supreme Court granted the Plaintiff's request. The notice of claim was deemed served on November 4, 2022 upon the named county defendants.

### FACTUAL ALLEGATIONS

**A. Plaintiff's Release, Arrest and Reincarceration**

10. The Plaintiff realleges and incorporates by reference herein paragraphs 1-9, as if more fully set forth below.

11. On information and belief, the Plaintiff was initially arrested on September 03, 2018, and confined to the Rockland County Jail on charges of Unlawful Possession of a Firearm in connection with the matter of the *People of the State of New York vs. Philip S. Aurecchione*, Case no. 18-388.

12. Contemporaneously therewith, the Plaintiff was also charged with violating the terms of his Federal Supervision in connection with his arrest on the NYS case, which proceeded under the matter of *United States of America v. Philip S. Aurecchione,* case no. 12-CR-0688-SJ.

13. At all times relevant and material thereto, the Plaintiff was never released from custody, but was subsequently transferred to Federal Custody on *Writ* from the Rockland County Jail to deal with the Federal violation of supervision, while his NYS matter remained pending.

14. On September 25, 2019, the Plaintiff was transferred into the Custody of the Federal Government and lodged in the Metropolitan Detention Center in Brooklyn, New York.

15. On September 26, 2019, the Plaintiff was sentenced on the violation of federal supervision and sentenced to a concurrent term of eighteen (18) months with no supervision to follow.

16. On February 07, 2020, the Plaintiff was sentenced on his guilty plea to Criminal Possession of a Weapon in the NYS case and was sentenced to an indeterminate sentence of 2 – 4 years of incarceration to run concurrent with the Federal Sentence, again no supervision was contemplated by that order.

17. Pursuant to the sentencing agreements between Federal and State authorities, the Petitioner's sentence was to be administered by the United States Bureau of Prisons.

18. On February 25, 2020, the Plaintiff was discharged from Federal custody. Given that no additional detainers were in place and the Bureau of Prisons accounted for his time credits from his 2018 arrest to his 2020 release, it was presumed he had fulfilled the necessary duration of his sentence.

19. After being released from Federal Custody, officials from DOCCS, the Rockland County Sheriff's Office, and the Rockland County District Attorney's Office coordinated to re-arrest the Plaintiff, nearly 16 months post-release. They asserted that his release from Federal Custody was premature and that he still had outstanding time to serve on his New York State sentence, which was concurrent with his federal conviction.

20. It was later revealed through communication by the State, that both the Rockland County Sheriff's Office and DOCCS failed to file a detainer with the Federal Bureau of Prisons before the Plaintiff's release. Given the state's apparent deference to the Federal officials in managing his sentence and the absence of

any other holds or detainers, the Plaintiff was under the impression that he had fully satisfied his terms. However, the Defendants later sought his return to state custody.

21. Following his release from Federal custody, the Plaintiff continuously maintained his residency in the State of New York.

22. Following the Plaintiff's release from Federal Custody, it took the Rockland County Sheriff's Office nearly five months to begin an investigation, with Defendant Officer Lyons and Defendant Kralik being assigned to the case.

23. Upon beginning the investigation, Defendants Lyons and Kralik sought a certificate of conviction from the sentencing Court. Seemingly questioning the legitimacy and the authority it might confer for an arrest, Defendants Lyons and Kralik, in collaboration with the Rockland County District Attorney's Office, sought a warrant from the sentencing court. However, the court denied their request.

24. After the warrant request was denied, Defendants Lyons and Kralik had notice that they did not possess the requisite authority to further detain or pursue the Plaintiff.

25. Additionally, given that the Plaintiff's Attorney actively argued against the issuance of the warrant in court, neither the Court nor the Rockland County Officials provided any subsequent directives for the Plaintiff to surrender himself to the Rockland County Sheriff's Department for continued incarceration related to his state conviction.

26. Indeed, as a clear indication that Defendants Lyons and Kralik did not believe they had a reasonable basis to arrest the Plaintiff, they waited almost eleven months after the warrant denial before proceeding with the arrest.

27. The nearly eleven-month delay by Defendants Lyons and Kralik before arresting the Plaintiff represents a grave miscarriage of justice that compromised the Plaintiff's rights and undermined his due process guarantees.

28. Instead of promptly acting on the certificate of conviction to arrest the Plaintiff, Defendants Lyons and Kralik chose to embark on a prolonged surveillance operation, both physical and electronic, targeting the Plaintiff. Their actions suggest an underlying intent to establish probable cause for a new offense, reinforcing the impression that they doubted the certificate's authority to arrest the Plaintiff from the outset.

29. Rather than acting promptly, Defendant Officers Lyons and Kralik chose to subject the Plaintiff to almost a year of continuous electronic and physical surveillance. In coordination with the Town of Newburgh Police Department, the FBI, and other entities, they covertly monitored the Plaintiff's activities. This clandestine operation involved both direct observation and extracting electronic information from social media and communication providers about the Plaintiff's behaviors, all carried out without a warrant or judicial authorization.

30. Nearly a year later, Defendants Lyons and Kralik, along with the other named defendant officers from the Rockland County Sheriff's Office, participated in the arrest of June 1, 2021 that infringed upon the Plaintiff's civil rights.

31. In the days preceding the police encounter, the defendant officers named in this complaint kept a close watch on the Plaintiff's vehicle. With prior knowledge from a police briefing before departing from Rockland County to the Plaintiff's location in nearby Orange County, New York, these officers were aware of the dubious grounds for the arrest. Nevertheless, they chose to unlawfully detain and forcefully apprehend the Plaintiff.

32. During the police encounter, defendant officers Lyons, Kralik, Budnick, VanCura and Colon acted in concert with each other to use force against the Plaintiff. After halting the Plaintiff's vehicle, they forcibly removed him from inside. During this action, one of the officers pushed the Plaintiff's head

against the car with significant force, an incident which upon information and belief the Plaintiff subsequently reported to medical personnel upon his intake at the jail.

33. Following his arrest, Defendant officers Lyons, Kralik, Budnick, VanCura and Colon failed in their essential duty to bring the Plaintiff promptly before the sentencing court. This denied him the critical opportunity for procedural due process, indispensable safeguards against unjust incarceration after he had lawfully lived his life for nearly 16 months, and a fair chance to present his case.

34. After his arrest, he was immediately detained and sent to the Rockland County Jail.

35. Throughout his time in custody, the investigating officers Defendant's Lyons and Kralik never made arrangements to bring the Plaintiff before the sentencing Court, all but ensuring that he would remain in-custody, nor did any of the other officers who partook in his arrest.

36. It should be noted, during a time when jails, nursing homes, and hospitals were grappling with heightened exposure to Covid-19, and as correctional facilities were actively working to decrease their inmate counts, the Defendant officers opted to have the Plaintiff re-incarcerated, thereby jeopardizing his safety.

**B. Plaintiff's Incarceration and Delayed *HABEAS* Proceedings**

37. After spending several weeks in the custody of the Rockland County Jail, the Plaintiff was then transported and transferred to the Downstate Correctional Facility in Dutchess County, New York.

38. After being received by the Downstate Correctional Facility, where he was yet again lodged without any new orders of re-commitment, Plaintiff was again subject to initial periods of solitary confinement and isolation due to Covid-19 Pandemic protocols.

39. The Petitioner thereafter spent the next several months in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") following his unlawful arrest, until

he was eventually paroled to the Peekskill Division of the DOCCS, where he continued to be under their direct supervision until May 11, 2022.

40. Throughout this entire ordeal, the Petitioner had to fight his way to freedom.

41. On August 25, 2021, nearly three (3) months into his confinement, the Plaintiff was finally able to retain counsel, who eventually filed a *Habeas* Petition for his immediate release from custody and under CPLR Art. 78 for the award of time credit for the periods he was at liberty under the mistaken belief he was free.

42. In a calculated move, and in response to Plaintiff's *Habeas* action, the DOCCS released the Plaintiff to Supervision on September 09, 2021, where he continued to remain under the supervision of DOCCS and subject to the abuses of Parole Officers Diedre Ryan and Lyn Johnson-Richardson.

43. Thereafter, the New York Attorney General, by and through, Assistant Attorney General Elizabeth Gavin sought dismissal of the Petitioners *Habeas* action in light of the Petitioner's "release from custody."

44. On November 10, 2021, the Court denied the Plaintiff's *Habeas* Relief as moot, but ruled in his favor on his request for the time credit he sought in connection with the time he spent at liberty, wherein he was credited with approximately (16) months' worth of time credit to be applied to the time he purportedly owed on the Rockland County sentence.

45. Thereafter, Plaintiff notified DOCCS and Parole Officers Ryan and Johnson about the awarded time credit and provided them with a copy of the court order.

46. DOCCS, Defendant Parole Officers Ryan and Johnson defied said Court order and refused to assist Plaintiff in getting the time credit he was due, instead they continued to mistreat and harass him while he was on Parole.

47. In response to Plaintiff's repeated demands to be credited with the time he was due, the New York Attorney General thereafter sought to overturn the court's decision on the award of time credit to Plaintiff.

48. On January 06, 2022, the New York Attorney General filed a motion to reargue, wherein she sought to overturn the judgment of the Court.

49. During DOCCS' motion to reargue, it presented misleading statements to the court, claiming that they had recalculated and applied the Plaintiff's time credit to his sentence, despite no such adjustment having been made.

50. On March 23, 2022, the Dutchess County Supreme Court returned its decision, and denied the Attorney General's requested relief, and found that the DOCCS had still not complied with its order in crediting the Petitioner with the credit he was due by order of the Court. No appeal was taken.

51. Thereafter, on April 23, 2022, Plaintiff filed a Federal *Habeas* Petition seeking to challenge his continued detention under the conditions of Parole Supervision.

52. In response, DOCCS voluntarily terminated and discharged the Plaintiff's sentence before the Court could rule on that matter, effective May 11, 2022.

53. Much like the proceedings before, the DOCCS sought to cover up its tracks and prevent a court from ruling on the merits of the *Habeas* applications by otherwise strategically taking steps to moot those actions through his release to Parole during the pendency of the state action and then a voluntary discharge of his sentence during the pendency of the federal *habeas* case.

54. The Plaintiff's sentence was terminated by "final discharge" on May 11, 2022.

C. **Unauthorized Special Conditions and Continued Supervision after Discharge**

55. While under the supervision of Defendant Parole Officers Ryan and Johnson-Richardson, Plaintiff was subjected to special rules and conditions that violated Plaintiff's substantive due process rights.

56. A central grievance in this complaint is the restriction imposed on the Plaintiff by Defendant Parole Officers, prohibiting him from living with his romantic partner. This decision was ostensibly based on a

prior contempt conviction from nearly two decades ago, involving a different romantic partner from when the Plaintiff was just a teenager.

57. Moreover, Defendant Parole Officers placed restrictions on the Plaintiff's ability to drive, work, attend commercial driver training, and mandated substance abuse counseling. This is despite the Plaintiff having been freely at liberty for close to 16 months without any required check-ins or infractions during the time leading up to these impositions.

58. During his approximately 16-months of being at liberty, the Plaintiff faced no accusations of engaging in criminal acts, issues living with his romantic partner, or claims of substance abuse. Nonetheless, the Parole Officers chose to impose restrictions on various aspects of his life, focusing only on his past without acknowledging his achievements during this period of liberty. This decision was made even though the original sentencing court had considered not placing him under supervision at all.

59. By letter dated May 11, 2022, Plaintiff's sentence was terminated and the supervising Parole Officers Ryan and Johnson-Richardson had been copied on that communication.

60. On May 18, 2022, even after presumably receiving the letter dated May 11, 2022, which apparently discharged the Plaintiff's sentence, Defendant Parole Officer Ryan entered the Plaintiff's property without permission. She called him out from his residence, searched, detained, and questioned him, under the guise of her authority as his parole officer.

61. Following the incident, the Plaintiff communicated and checked in with Defendant Parole Officer Ryan through text messages. Although Plaintiff received no response from her, at no point did she inform him that his sentence had been completed.

62. It wasn't until several weeks after this incident that the Plaintiff received the discharge letter via mail from DOCCS regarding the discharge of his sentence.

**FIRST CAUSE OF ACTION 42 U.S.C. § 1983**
*SUBSTANTIVE DUE PROCESS CLAIM*
*(Unlawful Search and Seizure and Unreasonable Delay)*

*(Against DEFENDANT OFFICERS SEAMUS LYONS, and KERRI KRALIK, (OFFICIAL AND INDIVIDUAL CAPACITY)*

**Violation of Plaintiff's Civil Liberties**
**under the 4th, 5th and 14th amendments to the U.S. Const.**

63. The Plaintiff realleges and incorporates by reference herein paragraphs 1-62, as if more fully set forth below.

64. On February 25, 2020, the Plaintiff was discharged from Federal custody.

65. In the absence of any further detainers, and with the state's apparent deference to Federal officials regarding his sentence, the Plaintiff continuously maintained his residency in the State of New York post-release, believing in good faith he was free of further obligations.

66. Despite this, almost five months after the Plaintiff's release, on July 16, 2020, the Rockland County Sheriff's Office began an investigation with Defendant Officers Lyons and Kralik at the helm.

67. Officers Lyons and Kralik secured a certificate of conviction on July 23, 2020 while investigating Plaintiff. However, doubts concerning its authoritative weight led them to request a warrant through the Rockland County District Attorney's Office. This request was denied on September 14, 2020.

68. Instead of promptly acting on the certificate of conviction to arrest the Plaintiff, Defendants Lyons and Kralik chose to embark on a prolonged surveillance operation, both physical and electronic, targeting the Plaintiff. Their actions suggest an underlying intent to establish probable cause for a new offense, reinforcing the impression that they doubted the certificate's authority to arrest the Plaintiff from the outset.

69. It's pertinent to note that on December 04, 2020, records from Defendant Officers indicate they had credible information confirming the Plaintiff's address. It's the very same location they later surveilled

and executed an arrest nearly 11 months after this confirmation. The reasons for such an inordinate delay remain undisclosed and inexplicable.

70. Following the court's denial of the warrant, and with no subsequent orders from either the Court or Rockland County Officials for the Plaintiff to surrender to the Rockland County Sheriff's Department, Defendant Lyons and Kralik knew they did not possess the proper authority to detain or pursue the Plaintiff.

71. Yet, despite this knowledge and having verified the Plaintiff's whereabouts in December, Defendant Lyons and Kralik chose to wait eleven months after the warrant's denial before making an arrest.

72. This prolonged delay, exacerbated by the failure of both the Rockland County Sheriff's Office and DOCCS to file a vital detainer with the Federal Bureau of Prisons prior to the Plaintiff's release, signals a gross negligence and blatant disregard for due process.

73. Ultimately, the Plaintiff was unjustly apprehended by Rockland County Officials, a staggering 16 months after his Federal release.

74. This arrest was rationalized by claiming that the Plaintiff's initial release was premature, and that he had outstanding time on his New York State sentence.

75. Such a delay in acting, especially when armed with verified information and amidst existing uncertainties about their arresting authority, is a blatant violation of the Plaintiff's substantive due process rights and raises severe concerns about the integrity and efficiency of the justice system.

76. The pivotal factors underscoring this case include: Plaintiff's non-attributability to the resulting delay, the County Defendants' actions transcending mere neglect, and the ensuing circumstances following his release and re-incarceration undeniably clashing with core principles of liberty and justice.

77. Importantly, the Plaintiff believed he had discharged his sentence post federal release; Rockland County did not lodge a detainer; no warrants materialized; he stayed within New York's purview; no new transgressions were alleged; and his attorney's appearance at the warrant hearing emphasized his transparency.

78. Despite knowing that the warrant had been denied, and detailing the same in their investigative report, the named Defendant Officers (Lyons and Kralik), with county sanction, investigated and pursued the Plaintiff.

79. Said actions by Defendant Officers (Lyons and Kralik) arguably shock the conscience in their disregard for due process.

80. The aforementioned delay, coupled with an intrusive, nearly year-long surveillance, highlights the named Defendants' persistent and egregious breach of the Plaintiff's constitutional protections.

81. Their unwarranted surveillance encompassed not only his domicile and electronic communications but also the detailed tracking of his daily life without any legal basis.

82. As a direct fallout of these actions and prolonged inactions, the Plaintiff experienced profound setbacks—employment loss, unwarranted imprisonment, and a sweeping curtailment of his fundamental freedoms. While the Second Circuit may not have ruled on this "conscious-shocking" standard, the very principles embedded within our Constitution and the facts presented herein cry out for justice.

**WHEREFORE,** Plaintiff seeks statutory and compensatory damages in an amount to be proven at trial, but believed to be in excess of $5,000,000.00, as well as punitive damages, and attorneys fees.

### SECOND CAUSE OF ACTION UNDER 42 U.S.C. § 1983 *et. seq.*
### PROCEDURAL DUE PROCESS CLAIM
### (4th, 5th, 6th, 14th Amendments)

*AS TO DEFENDANT OFFICERS SEAMUS LYONS, MARK COLON, KERRI KRALIK, JAMES VANCURA, AND INV. BUDNICK (OFFICIAL and INDIVIDUAL CAPACITY)*

83. The Plaintiff realleges and incorporates by reference herein paragraphs 1-82 as if more fully set forth below.

84. The individually named County Defendant Officers (Lyons, Kralik, Colon, VanCura, and Budnick) collectively caused the blatant disregard for the Plaintiff's procedural due process rights. Their collective and individual actions and omissions, and the duties they neglected, form the crux of the Plaintiff's grievances under this count.

85. These duties and actions encompass: (a) initiating criminal proceedings against the Plaintiff through an arrest without probable cause or a warrant; (b) acting with clear malice in effecting the arrest; (c) leaving the Plaintiff without any procedural due process following his arrest.

86. After being unjustly arrested, the Plaintiff was neither presented to the court nor informed of the charges laid against him. This left him unable to challenge the County Defendants' actions, rendering him voiceless in the face of injustice.

87. The Plaintiff's ordeal deepened as he was detained in the Rockland County Jail for an extended period, only to be subsequently transferred to Downstate Prison without ever being afforded an opportunity to go before the Court.

88. As the Plaintiff would have been entitled to time credit for the period he spent at liberty, the Plaintiff would have likely avoided incarceration had the defendant officers lived up to their duty to bring him before the court post arrest.

89. The duty to present the Plaintiff before the court post-arrest rested unequivocally on the individually named Defendant Officers. Their intentional avoidance of this duty aimed to further disenfranchise the Plaintiff, made more blatant in the shadow of a prior court's denial for an arrest warrant.

90. Throughout this ordeal, Plaintiff was deprived of the vital procedural protections embedded within the 4th, 5th and 6th amendments of the Constitution, as applied to the state actions through the 14th amendment to the United States Constitution.

91. Notably, at every consequential juncture—from his arrest to his transfer into incarceration—the Plaintiff found himself without the support of appointed legal counsel, further hindering his ability to challenge the actions levied against him.

92. New York Criminal Procedure mandates that officers promptly present a warrantlessly arrested individual, or one detained pursuant to a bench warrant, before the court for an initial arraignment and bond determination. However, in this instance, the arresting officers bypassed this procedure and directly incarcerated the Plaintiff, depriving him of this critical step.

93. By strategically preventing the Plaintiff's access to both the courts and legal counsel, the Defendant Officers ensured that he remained powerless, unable to contest their malicious actions.

94. As a result of the actions and omissions made by Defendant Officers, the Plaintiff was subjected to serve an unlawful sentence and forced to retain private counsel for a chance to have his day in Court.

95. This pattern of behavior, especially by the individually named Defendant Officers, is demonstrably inconsistent with the principles of liberty and justice. Their neglect and deliberate inaction over an extended period emphasized their joint and several responsibilities, thus exacerbating the violation of the Plaintiff's rights.

**WHEREFORE,** Plaintiff seeks statutory and compensatory damages in an amount to be proven at trial, but believed to be in excess of $5,000,000.00, as well as punitive damages, and attorneys fees.

### THIRD CAUSE OF ACTION
### SUBSTANTIVE DUE PROCESS CLAIM
### (1st, 5th and 14th Amendment)
### Unrelated Special Conditions of Parole/Violations of Freedom of Association

*(against Defendant Parole Officers Ryan and Johnson-Richardson in their individual capacities)*

96. The Plaintiff incorporates and realleges paragraphs 1-95 as if fully set forth herein.

97. At all relevant times, the Plaintiff was subjected to arbitrary conditions of Parole by Defendant Parole Officers Ryan and Johnson-Richardson. These conditions were unrelated to the Plaintiff's 2018 conviction for unlawful possession of a firearm.

98. Notably, Defendant Parole Officers imposed a draconian condition of preventing the Plaintiff from cohabiting with his current romantic partner. This invasive condition was rooted in a prior contempt conviction from nearly two decades ago, involving a different individual and circumstances from the Plaintiff's youthful years.

99. Such a restriction egregiously infringes upon the Plaintiff's 1st Amendment right to freedom of association, especially considering the Plaintiff's relationship with his current partner, free from any evidence of criminal or abusive behavior.

100. In addition to this unwarranted interference in the Plaintiff's intimate associations, the Defendant Parole Officers imposed a series of conditions that substantially limited the Plaintiff's personal and professional freedoms. This included a bar on his ability to drive, seek meaningful employment, undertake commercial driver training, and an unnecessary mandate to attend substance abuse counseling.

101. These conditions directly contradict the Plaintiff's recent history of approximately 16 months of responsible living and adherence to societal norms without any supervision. Throughout this period, the Plaintiff maintained a clean record devoid of any criminal activity, substance abuse, or domestic altercations.

102. By imposing these unmerited and punitive restrictions, the Defendant Parole Officers disregarded the Plaintiff's evident rehabilitative progress and his positive societal reintegration. They willfully ignored his recent history, focusing disproportionately on distant past infractions or baseless allegations.

103. This oversight is magnified by the original sentencing court's contemplation of forgoing parole supervision for the Plaintiff altogether, recognizing his potential for rehabilitation.

104. By endorsing and enforcing these arbitrary conditions of parole, Defendant Parole Officers Ryan and Johnson-Richardson acted without any rational justification, violating the Plaintiff's substantive due process rights and his 1st Amendment right to freedom of association.

**WHEREFORE**, in light of the foregoing:

1. The Plaintiff seeks a declaration from this Court recognizing the violations by Defendant Parole Officers Ryan and Johnson-Richardson as an infringement of the Plaintiff's civil liberties.

2. Damages, both compensatory and punitive, for violations endured by the Plaintiff due to the Defendant's actions.

3. Awarding of attorney's fees and costs associated with this action.

4. Any other relief this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**SUBSTANTIVE DUE PROCESS CLAIM**
**(4th and 14th Amendment - Unlawful Search/Seizure)**

*(against Defendant Parole Officer Diedre Ryan individual capacity)*

105. The Plaintiff realleges and incorporates by reference herein paragraphs 1- 104, as if more fully set forth below.

106. A letter dated May 11, 2022, confirming the discharge of the Plaintiff's sentence was issued, with Defendant Parole Officer Ryan explicitly copied, thereby alerting her that Plaintiff was no longer on Parole.

107. Despite this clear communication, on May 18, 2022, Defendant Parole Officer Ryan trespassed onto the Plaintiff's property, summoned him from within his home, searched and detained him, as well as questioned him under the guise that he was still on Parole.

108. During this visit, Plaintiff was not advised by Parole Officer Ryan that he was discharged from his sentence at any time.

109. Following her visit, Defendant Parole Officer Ryan had ample opportunity to alert Plaintiff of the discharge of his sentence, after he communicated and sent several text messages checking-in and staying in communication with Defendant Parole Officer Ryan after her visit on May 18, 2022.

110. The sequence of events, spearheaded by Defendant Parole Officer Ryan, stands in clear violation of the Plaintiff's Fourth Amendment rights and his entitlement to due process. It sheds light on an egregious misuse of authority and a brazen neglect for the bounds of law and justice.

111. The undue stress, humiliation, and constitutional violation endured by the Plaintiff at the hands of the Defendant, especially with her prior knowledge of his discharge, calls for rigorous legal scrutiny, redress, and accountability.

**WHEREFORE**, in light of the foregoing:

1. The Plaintiff seeks a declaration from this Court recognizing the violations by Defendant Parole Officer Ryan, especially on May 18, 2022, as an infringement of the Plaintiff's Fourth Amendment rights.

2. Damages, both compensatory and punitive, for the stress, embarrassment, and violations endured by the Plaintiff due to the Defendant's actions.

3. Awarding of attorney's fees and costs associated with this action.

4. Any other relief this Court deems just and proper.

Dated: October 25, 2023

                                                Respectfully Submitted,

By:  _____
Robert C. Barchiesi, II, Esq.
PA BAR ID No. 328056
306 South New Street
Bethlehem, PA 18015
*Counsel for Plaintiff*
*\* Admitted Pro Hac Vice S.D.N.Y*